UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE ANNE SCHNEIDER, | Case No. 1:23-cv-00591-CDB (SS) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | (Doc. 12) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Charlene Anne Schneider ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act").  (Doc. 1).  The matter is before the Court on the Administrative Record (Doc. 11; hereinafter, "AR") and the parties' briefs (Docs. 12, 14), which were submitted without oral argument.  Upon review of the record, the undersigned finds and rules as follows.[1]

I.    BACKGROUND

A.    Administrative Proceedings and ALJ's Decision

On February 16, 2021, Plaintiff filed an application under Title II of the Social Security Act, alleging disability beginning on February 25, 2020.  (AR 73, 94, 248).  Plaintiff's claim was

---

[1] On May 22, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned for all purposes.  (Doc. 10).

denied initially and again upon reconsideration.  (AR 72-94, 95-118, 141-45, 147-151).  Plaintiff then requested a hearing before an Administrative Law Judge.  (AR 171-173).

Administrative Law Judge ("ALJ") Charlie Johnson held a hearing on November 9, 2022, wherein Plaintiff, her attorney Robert Davis, and impartial vocational expert ("VE") Julie Harvey appeared.  (AR 31-71).  ALJ Johnson issued an unfavorable decision on December 9, 2022.  (AR 17-25).  The Appeals Council denied Plaintiff's request for review on February 14, 2023, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 1-6).  Plaintiff subsequently commenced this action seeking judicial review of the ALJ's decision.  (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520.  (AR 18).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (AR 19).

At step two, the ALJ found that Plaintiff had the following medically determinable impairments ("MDI") which significantly limits the ability to perform basic work activities: schizoaffective disorder, anxiety, and attention deficit hyperactivity disorder.  The ALJ also found that Plaintiff had the non-severe impairments of migraines and finger pain.  (AR 19).  The ALJ addressed the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2]  In the first, second, and third areas, the ALJ found Plaintiff had a moderate limitation; in the fourth area, the ALJ found that Plaintiff had a mild limitation.  (AR 20).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 20-21).

Prior to step four, the ALJ found the following residual functional capacity ("RFC"):

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Part 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id*.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  *Id.*

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, and repetitive tasks, interact with others occasionally, can never perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas, and must avoid hazards such as unprotected heights and dangerous moving machinery.

(AR 21).  In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. § 404.1529 and SSR 16-3p.  (AR 21).  The ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical and other evidence of record.  (AR 22-24).  The ALJ, citing to the medical record, determined that the evidence did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments.  (AR 23-24).

At step four, the ALJ determined that Plaintiff is unable to perform past relevant work under 20 C.F.R. §§ 404.1565.  (AR 24).  The ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy, namely as a merchandise marker, mail sorter, and routing clerk.  (AR 24-25).  The ALJ concluded that Plaintiff had not been under a disability since the alleged onset date.  (AR 25).

**B.      Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.      LEGAL STANDARD**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant

4

is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

III.    ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying her application. Plaintiff raises three issues in her motion:

1.    The ALJ improperly rejected and failed to incorporate in the RFC a limitation assessed on reconsideration by state agency psychological consultant Phaedra Caruso-Radin;

2.    The ALJ failed to present a complete hypothetical to the VE; and

3.    The ALJ failed to provide legally sufficient reasons for finding unpersuasive the "marked limitation" findings by psychological consultative examiner Garrett Seward. *See* (Doc. 12).

**A. Whether the ALJ Failed to Properly Consider the Mental RFC Findings by State Agency Psychological Consultant Phaedra Caruso-Radin and Include Them in the RFC**

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or

prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1).  In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."  20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).

Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  *Woods*, 32 F.4th at 792-

93.

### i. Parties' Contentions

Plaintiff asserts that substantial evidence does not support the ALJ's omission from the RFC of Dr. Caruso-Radin's limitation that Plaintiff can understand, remember, and apply knowledge and carry out a two-step command. (Doc. 12 at 3). Plaintiff contends that, by failing to include such a limitation, the ALJ "implicitly rejected Dr. Caruso-Radin's finding" thereto. Plaintiff argues that the ALJ "essentially agreed with these limitations," finding them more supported than Dr. Seward's opinion, and finding that the record is "most consistent with the findings at the initial and reconsideration level," but then did not include this limitation in the RFC. *Id.* at 4.

Plaintiff argues that the ALJ "played doctor" in that he mentioned the aforementioned limitation by Dr. Caruso-Radin and did not include it in Plaintiff's RFC, instead limiting Plaintiff to "simple, routine, and repetitive tasks, a less restrictive limitation and simply disregarded this specific limitation." *Id.* at 4-5 (citation omitted). Plaintiff separately argues that the ALJ considered the opinions of the state agency psychological consultants together, despite the different findings of said consultants at the initial level and upon reconsideration, and "did not reconcile the differences." In particular, at the initial level, psychologist J. Edd Bucklew found that Plaintiff could complete simple tasks with usual supervision and social interaction, but Dr. Bucklew "does not mention anything regarding being able to understand, remember, apply knowledge, and carry out a 2-step command." *Id.* at 5-6. Plaintiff asserts that, thus, the ALJ did not account for all of Plaintiff's limitations when determining the RFC and erred in failing to include a limitation to two-step commands. *Id.* at 7-8.

Defendant counters that Dr. Caruso-Radin "did not intend to limit Plaintiff to work more restrictive than simple, repetitive tasks." Defendant notes that, at the initial level, Dr. Bucklew found that Plaintiff "could complete tasks with simple instructions with limited public interaction" and, upon reconsideration, Dr. Caruso-Radin found that Plaintiff had "fewer limitations than Dr. Bucklew" and noted that the "'evidence as a whole indicates the prior decision [by Dr. Bucklew] remains reasonable.'" (Doc. 14 at 9; quoting AR 109). Defendant asserts that, upon finding a limitation to two-step tasks, Dr. Caruso-Radin "referenced Dr. Bucklew's finding of simple,

repetitive tasks, and stated that Dr. Bucklew's finding remained reasonable based on the updated medical record." *Id.* (citing AR 106). Defendant argues that the ALJ appropriately found that Plaintiff could perform simple tasks and, thus, did not err in formulating the RFC. *Id.* at 10-11.

### ii. *Analysis*

`                               1. Findings in Initial Decision and Upon Reconsideration

Dr. Bucklew found that, "[w]ith ability to understand, remember, and perform simple written and oral instructions, the claimant is not significantly limited." (AR 84). Dr. Bucklew opined that Plaintiff "can complete simple tasks with usual supervision and social interaction," and "can complete tasks with simple instruction and procedures, usual supervision and social interaction, and limited public interaction." (AR 88, 90). Upon reconsideration, Dr. Caruso-Radin noted that "the evidence as a whole indicates the prior decision [of Dr. Bucklew] remains reasonable and based in the [medical record]." (AR 106, 109). Dr. Caruso-Radin opines that Plaintiff is "[m]oderately limited" in the ability to carry out detailed instructions, and is "[n]ot significantly limited" as to the "ability to complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods." (AR 112).

In a subpart immediately below the latter finding, directing the consultant to "[e]xplain in narrative form the sustained concentration and persistence capacities and/or limitations," Dr. Caruso-Radin states that Plaintiff "can understand, remember, apply knowledge and carry out a 2-step command involving simple instructions and maintain [concentration, persistence, and pace] for such." Dr. Caruso-Radin continues that, "[a]lthough the [Plaintiff] may have difficulty sustaining attention over extended periods, [Plaintiff] could sustain [concentration, persistence, and pace] up to 4 [hour] increments with customary work breaks; is able to complete usual workday/week [sic]." (AR 113). When discussing the strength factors of the physical RFC under the section titled "Assessment of Vocational Factors," the reconsideration decision includes the notation "MRFC- Claimant can complete tasks with simple instruction and procedures, usual supervision and social interaction, and limited public interaction." (AR 116). The decision is signed by Dr. Caruso-Radin and examiner P. Lopez. (AR 117).

## 2.  The ALJ's Findings and Related Authority

The ALJ considered and addressed the opinions of Dr. Bucklew and Dr. Caruso-Radin together, finding them persuasive and "[m]ost consistent with this psychological record," which evidenced Plaintiff's ability to "perform simple, routine, and repetitive tasks."  (AR 22-23).  The ALJ did not separately discuss Dr. Caruso-Radin's limitation regarding two-step commands involving simple instructions.  Plaintiff challenges the ALJ's omission of this limitation from the RFC, which Plaintiff argues would "further limit the jobs [P]laintiff would be able to perform" given that a limitation to "simple, routine and repetitive tasks" is a "less restrictive limitation" than the limitation of two-step commands involving simple instructions, which is a further "subset of simple, routine, repetitive tasks." (Doc. 12 at 5).

Jobs to be considered by the VE can be classified according to any of six "Reasoning Levels", ranging from one (the simplest) to six (the most complex).  Dictionary of Occupational Titles ("DOT") (4th ed. 1991), App. C, § III, 1991 WL 688702; *see Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).  In *Rounds*, the Ninth Circuit found that, where the ALJ limited the plaintiff to "one to two step tasks" in the RFC, there "was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'  The conflict between Rounds' RFC and Level Two reasoning is brought into relief by the close similarity between Rounds' RFC and Level One reasoning.  Level One reasoning requires a person to apply 'commonsense understanding to carry out simple one- or two-step instructions.'" *Rounds*, 807 F.3d at 1003.

The undersigned acknowledges that, since the Ninth Circuit's decision in *Rounds*, district courts have diverged in deciding whether a limitation to two-step tasks precludes jobs that require a Reasoning Level of two.  Some courts have concluded an ALJ errors where she acknowledges a medical provider's functional assessment that the claimant could perform one-or-two step instructions but assesses an RFC limitation of "simple repetitive tasks" without expressly discounting the one-or-two-step limitation. *E.g., Jones v. Berryhill*, No. CV 17-07404-AFM, 2018 WL 3689560, at *3 (C.D. Cal. July 31, 2018) (citing cases and finding under now-superseded Social

Security regulations that "the ALJ's RFC limiting Plaintiff to simple, routine tasks is consistent with part of Dr. Caruso-Radin's opinion, but fails to take into account her opinion that Plaintiff could understand, remember, and carry out two-step commands.  The ALJ's failure to either incorporate this opinion of Dr. Caruso-Radin, or provide sufficient reasons for rejecting it, constituted error."); *Steven J. P. v. Saul*, No. CV 19-4330-PLA, 2020 WL 208808, at \*6 (C.D. Cal. Jan. 14, 2020) (same).

Other courts have found that an RFC restriction to "simple work" encompasses a limitation to one-or-two step tasks.  *E.g., Lyon v. Comm'r of Soc. Sec.*, No. 1:16-CV-01634-SAB, 2017 WL 6040422, at \*11 (E.D. Cal. Dec. 6, 2017) (finding under now-superseded Social Security regulations that "the ALJ's determination that Plaintiff is limited to 'simple work as defined in the DOT as SVP levels 1 and 2, routine and repetitive' adequately encompassed Dr. Caruso–Radin's opinions regarding Plaintiff's mental limitations in the sustained concentration and persistence section of Dr. Caruso–Radin's mental residual functional capacity assessment.").

Yet other courts have found that, where a medical opinion states both that a claimant can perform one-to-two-step tasks *and* simple and routine tasks, "it is improper to conclude that the claimant can *only* perform 1 to 2-step tasks, but that the two statements ought to be read cumulatively and it is appropriate for the RFC to only reflect the limitation to simple/routine tasks consistent with the regulatory principle that the RFC represents [the] most one can do dispute one's limitations, not the least one can do."  *Tainter v. Kijakazi*, No. 1:20-cv-01770-GSA, 2023 WL 1767736, at \*6-7, 11 (E.D. Cal. Feb. 3, 2023) (citing *inter alia Nyberg v. Comm'r of Soc. Sec.*, No. 2:20-cv-0338-DMC, 2021 WL 1295378, at \*6 (E.D. Cal. Apr. 7, 2021); *e.g. Jacob C. W. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00356-SAB, 2025 WL 415069, at \*6 (E.D. Cal. Feb. 6, 2025) (upholding ALJ's adoption of the "broader limitation" into the RFC where two doctors opined that the claimant could carry out short and simple instructions and also "could maintain for simple 1-2 step tasks"); *Corwin v. Kijakazi*, No. 1:20-CV-00394-GSA, 2021 WL 5771658, at \*4 (E.D. Cal. Dec. 6, 2021) (rejecting claimant's argument that two doctors' finding she could "carry out simple one-two step instructions" necessarily limited her to jobs implicating Reasoning Level 1 because "the doctors also opined that she could perform simple routine tasks, and it is reasonably well established that a

limitation to simple and routine tasks is consistent with the demands of R2 jobs.").

### 3. The Operative Limitation Was to Simple Tasks

Here, upon evaluation of the record, the Court finds this third variety of cases (reflected by the holdings in *Tainter*, *Jacob C. W.*, and *Corwin*) most persuasive and relevant to the facts of this case. Dr. Bucklew found that Plaintiff "can complete simple tasks with usual supervision and social interaction," and "can complete tasks with simple instruction and procedures, usual supervision and social interaction, and limited public interaction." (AR 88, 90). Dr. Caruso-Radin found that Plaintiff is "[n]ot significantly limited" as to the "ability to complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods." (AR 112). Dr. Caruso-Radin further found that Plaintiff "can understand, remember, apply knowledge and carry out a 2-step command involving simple instructions and maintain [concentration, persistence, and pace] for such." Dr. Caruso-Radin observed, "Although the [Plaintiff] may have difficulty sustaining attention over extended periods, [Plaintiff] could sustain [concentration, persistence, and pace] up to 4 [hour] increments with customary work breaks; is able to complete usual workday/week [sic]." (AR 113). Dr. Caruso-Radin also found that "the evidence as a whole indicates the prior decision remains reasonable and based in the [medical record]." (AR 106, 109). Additionally, when discussing the strength factors of the physical RFC under the section titled "Assessment of Vocational Factors," the reconsideration decision includes the notation "MRFC-Claimant can complete tasks with simple instruction and procedures, usual supervision and social interaction, and limited public interaction." (AR 116).

Dr. Bucklew did not opine that Plaintiff was limited to two-step commands involving simple instructions, only Dr. Caruso-Radin did so. In the same reconsideration decision, Dr. Caruso-Radin also noted that "the evidence as a whole indicates the prior decision [of Dr. Bucklew] remains reasonable and based in the [medical record]." (AR 106, 109). And the reconsideration decision further repeats Dr. Bucklew's opined limitation in the "Assessment of Vocational Factors" section. Dr. Caruso-Radin's adoption of Dr. Bucklew's findings in this regard is consistent with the balance of her other findings. Thus, for example, Dr. Caruso-Radin opines that Plaintiff is "[m]oderately

12

limited" in the ability to carry out detailed instructions, with no finding of any greater restriction regarding detailed instructions. (AR 112).

In a similar case decided by another judge of this Court (*Andrade v. Comm'r of Soc. Sec.*, No. 1:22-cv-00861-EPG, 2023 WL 3601572 (E.D. Cal. May 23, 2023)), a state agency consultant found in the initial disability determination that the plaintiff could "understand and remember instructions for simple tasks." Upon reconsideration, a different state agency consultant concluded that the initial assessment "remains appropriate [and] is adopted." The latter consultant also concluded that the plaintiff was moderately limited in understanding and remembering detailed instructions, but concluded that she was capable of, among other things, "understanding, carrying out, & remembering 1 to 2 step instructions." *Andrade*, 2023 WL 3601572, at *1. The plaintiff argued that the ALJ erred by finding persuasive the reconsideration-level consultant's opinion but failing to limit the claimant's RFC to "understanding, carrying out, & remembering 1 to 2 step instructions." Like Plaintiff here, the *Andrade* plaintiff asserted that all occupations relied on by the ALJ at step five of the analysis required a Reasoning Level of 2 or greater and, therefore, would be precluded. *Id.* at *2 (citing *Rounds*, 807 F.3d at 1003).

The *Andrade* court noted that the issue before it (identical to the issue here) was whether the reconsideration-level consultant's assessment that Plaintiff could understand, carry out, and remember 1 to 2 step instructions reflected the most he could do, or whether the 1 to 2 step instruction limitation was merely an example of the plaintiff's capabilities within the consultant's broader assessment. The court concluded based on the structure of the consultant's opinion that the more restrictive limitation was offered only as an example of what he could do as part of a broader limitation. *Id.* at *3 (citations omitted). The *Andrade* court further noted that the "the context of the record indicates that the operative limitation is that Plaintiff can follow simple instructions as opposed to being specifically limited to only 1 to 2 step instructions." *Id.* at *4. Especially relevant here, the court noted that the reconsideration-level consultant expressly adopted the initial-level consultant's prior assessment that the plaintiff could follow "instructions for simple tasks." *Id.*

As noted above, this case presents facts and circumstances closely similar to those at issue

13

in *Andrade*. In brief, Dr. Bucklew found a limitation to simple and repetitive tasks; Dr. Caruso-Radin found Dr. Bucklew's opinion reasonable and supported by the record; Dr. Caruso-Radin found that Plaintiff can carry out a two-step command involving simple instructions, with the reconsideration decision also repeating the same limitation assessed by Dr. Bucklew. To be fair, the structure of Dr. Caruso-Radin's opinion is distinct from the structure of the reconsideration-level consultant's opinion in *Andrade* and does not as plainly signal that the more restrictive limitation was merely a subset of the broader restriction. However, Dr. Caruso-Radin included the "two-step command" limitation in a subpart below her finding that Plaintiff is "[m]oderately limited" in the ability to carry out detailed instructions, and is "[n]ot significantly limited" as to the "ability to complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods." (AR 112).

The subpart states, "Explain in narrative form the sustained concentration and persistence capacities and/or limitations," and Dr. Caruso-Radin states that Plaintiff "can understand, remember, apply knowledge and carry out a 2-step command involving simple instructions and maintain [concentration, persistence, and pace] for such." She further observes that, "[a]lthough the [Plaintiff] may have difficulty sustaining attention over extended periods, [Plaintiff] could sustain [concentration, persistence, and pace] up to 4 [hour] increments with customary work breaks; is able to complete usual workday/week [sic]." (AR 113).

In sum, the context of the record demonstrates that the controlling limitation is that Plaintiff is able to complete simple work. The record does not suggest that Plaintiff is specifically limited to only two-step tasks. This is particularly supported by the fact that Dr. Caruso-Radin found Dr. Bucklew's opinion reasonable and did not distinguish it in any way, and that the reconsideration decision repeated Dr. Bucklew's limitation under the section titled "Assessment of Vocational Factors." (AR 116) (stating "MRFC- Claimant can complete tasks with simple instruction and procedures, usual supervision and social interaction, and limited public interaction.").

Plaintiff's contention that the ALJ "played doctor" is without merit. Plaintiff provides no argument that the ALJ interpreted raw medical data and crafted RFC restrictions therefrom. *See*

(Doc. 12 at 4-5).  Rather, the ALJ translated limitations within medical opinions into the RFC.  *See Arias v. Comm'r of Soc. Sec. Admin.*, No. CV-22-08123-PCT-DMF, 2023 WL 2909220, at *6 (D. Ariz. Apr. 12, 2023) ("the ALJ did not wholly discount the state agency consultants' opinions and adopted most of the consultants' limitations, as opposed to crafting Plaintiff's limitations from the raw medical evidence.  The ALJ's RFC determination here is thus differentiable from circumstances where no evidence or source opinion supported an ALJ's RFC determination.").

Thus, the ALJ did not erroneously fail to provide reasoning sufficient to reject the challenged limitation assessed by Dr. Caruso-Radin.  For the same reason, the ALJ did not err in failing to include a limitation to two-step commands in the RFC.  *See Andrade*, 2023 WL 3601572, at *4 ("In conclusion, because the record does not establish that Dr. Garland intended to limit Plaintiff to only following 1 to 2 step instructions, the ALJ did not err by failing to include such a limitation in the RFC despite finding Dr. Garland's opinion persuasive.").  Insofar as Plaintiff asserts that the RFC must incorporate verbatim limitations from a particular medical opinion, that argument is unavailing.  *See James v. O'Malley*, No. 1:23-cv-00842-SKO, 2024 WL 2883532, at *6 (E.D. Cal. June 7, 2024) ("To the extent Plaintiff contends the RFC must mirror a specific medical opinion, this is incorrect.  The ALJ's responsibility is to interpret the evidence of record, including medical evidence.  An ALJ does not commit legal error when the ALJ assesses an RFC that is consistent with the record.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B. Whether the Hypothetical to the VE Was Incomplete and the Work Identified by the VE Was Inconsistent with Plaintiff's Limitations**

*i. Parties' Contentions*

Plaintiff argues that the ALJ failed to pose a complete hypothetical to the VE.  (Doc. 12 at 8).  Plaintiff's argument relies on the same grounds she advanced in challenging the adequacy of the RFC: that the hypothetical failed to include the most restrictive limitation (two step commands) embodied in Dr. Caruso-Radin's opinion.  Plaintiff argues that, since the ALJ found Dr. Caruso-Radin's opinion persuasive, the two-step command limitation should have been included in the hypothetical presented to the VE.  *Id.* at 8-9.  Plaintiff contends that failure to do so resulted in the VE identifying jobs with a Reasoning Level of two, which Plaintiff would be unable to perform if

15

a limitation to two-step commands were included within the RFC. *Id.* at 9-11.

Defendant counters that the ALJ did not err at step five of the analysis given the proper treatment afforded to Dr. Caruso-Radin's opinion and that the RFC's limitation to simple, routine, and repetitive tasks was appropriate and did not conflict with jobs identified by the VE, which require Reasoning Level two. (Doc. 14 at 11).

### ii.    Analysis

As noted *supra* in subpart (A), the ALJ did not erroneously fail to provide reasoning sufficient to reject the challenged limitation assessed by Dr. Caruso-Radin. "An ALJ is not obligated to adopt allegations that the record does not support. An ALJ does not err by excluding unsupported limitations from the RFC or hypotheticals presented to a vocational expert." *Jennifer F. v. O'Malley*, No. CV 22-7923 MRW, 2024 WL 6888647, at *1 (C.D. Cal. Mar. 19, 2024) (citing, *inter alia*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001)). Because a restriction to two-step commands was not improperly excluded from the RFC, the ALJ did not err in failing to include it in his hypotheticals to the VE.

Additionally, the VE testified that the Plaintiff could perform the occupations of merchandise marker, mail sorter, and routing clerk. (AR 25). All three of these occupations are categorized as Reasoning Level of two. The ALJ's restriction to "simple, routine, and repetitive tasks" does not conflict with a Reasoning Level of two. (AR 21). Thus, the ALJ did not err by failing to provide a complete hypothetical to the VE and the work identified by the VE is not inconsistent with the limitations in the RFC. *See Stern v. O'Malley*, No. 1:24-CV-00064-SKO, 2024 WL 4268027, at *12 (E.D. Cal. Sept. 23, 2024) ("Courts, including this one, have held that the ability to perform simple, routine, and repetitive tasks is equivalent to Level Two reasoning.") (citing, *inter alia*, DOT (4th ed. 1991), App. C, § III, 1991 WL 688702); *Cox v. Comm'r of Soc. Sec.*, No. 1:23-cv-00448-SAB, 2024 WL 3252989, at *15 (E.D. Cal. July 1, 2024) (citing cases and noting that "[c]ourts in this circuit have consistently found that Level 2 reasoning jobs do not conflict with a restriction to simple work.").

///

///

**C. Whether the ALJ Failed to Provide Legally Sufficient Reasons for Finding Unpersuasive the Marked Limitations Opined by Psychological Consultative Examiner Garrett Seward**

### i. *Parties' Contentions*

Plaintiff argues that the ALJ improperly rejected Dr. Seward's opinion given his functional assessment appropriately was based on the results of a mental status examination and clinical interview.  Plaintiff separately argues that the ALJ's rejection of the medical opinion based on Plaintiff's activities of daily living was improper.  (Doc. 12 at 13-14).  Plaintiff asserts that a work environment is often an unfamiliar situation, as the regulations establish, and the ALJ did not take this into account when concluding that the marked limitations opined by Dr. Seward were unpersuasive.  Plaintiff also asserts that the medical record reflects she experienced auditory hallucinations which would affect her ability to complete a workday or workweek, or handle the usual stress of a competitive work environment.  *Id.* at 14 (citing, *inter alia*, AR 544, 704, 1052, 1507).

Defendant counters that Dr. Seward's opinion was unsupported by and inconsistent with the largely unremarkable findings made during the noted examination.  (Doc. 14 at 13, 15; citing AR 585-86; AR 538-42, 604, 731, 815, 830, 935, 1090, 1151).  Defendant separately argues that the ALJ properly found Plaintiff's activities of daily living were inconsistent with Dr. Seward's opinion.  *Id.* (citing AR 314-17, 577, 585, 774).

### ii. *Analysis*

#### 1.  Dr. Seward's Opinion

Psychologist Garrett Seward completed a mental status evaluation of Plaintiff on August 11, 2021.  Dr. Seward noted that Plaintiff was fully oriented, attired appropriately, and interacted appropriately during the exam, presenting as slightly anxious.  (AR 583, 585-86).  Dr. Seward found Plaintiff "not significantly limited" as to ability to understand, remember, and perform simple written and oral instructions; "mildly limited" as to performing detailed and complex tasks; "moderately limited" as to maintaining regular attendance in the workplace; "moderately limited" as to ability to perform work activities without special or additional supervision; "markedly

17

limited" as to ability to complete a normal workday or workweek without interruptions; "mildly limited" as to ability to accept instructions from supervisors; "moderately limited" as to ability to interact with coworkers and with the public; and "markedly limited" as to ability to deal with the usual stresses encountered in competitive work environment.  (AR 586-87).

`                                        2.   The ALJ's Finding

Regarding supportability of Dr. Seward's opinion, the ALJ found as follows:

> In terms of supportability, Dr. Seward's examination provided the basis for his own conclusions as well as the conclusions of the State Agency reviewers at the initial and reconsideration level.  However, the contrast in findings is stark.  Dr. Seward's examination notes reveal that the claimant had overall normal mental status in the examination.  The claimant was cooperative, made good eye contact, was alert, was fully oriented, and had intact intelligence.  Her memory and fund of knowledge were adequate.  Her concentration was too.  Her abstract reasoning appeared to be intact given a correct interpretation of a common proverb.  Her judgment, calculation ability, and insight was intact.  She denied suicidal ideation.  She had intact, linear, and logical thoughts, and denied hallucinations.  Her only abnormal findings during this examination were her anxious mood and affect, and somewhat impaired attention.  It is not clear then on what basis Dr. Seward reached his conclusions of marked limitations, except perhaps purely by accepting the claimant's allegations entirely.  The State Agency reviewers, who conducted a more thorough consistency analysis, reached conclusions much more in line with the results from Dr. Seward's own examination.  Therefore, their findings are more supported than Dr. Seward's opinion.

(AR 22-23; citation omitted).  Regarding the consistency of Dr. Seward's opinions with the record, the ALJ found as follows:

> Turning next towards consistency of the record, the record is most consistent with the findings at the initial and reconsideration level, and Dr. Wagner's opinion.  It is inconsistent with Dr. Seward's own conclusions, and the claimant's allegations.
>
> First, a review of the claimant's daily activities.  The claimant maintains sufficient ability to care for her hair, shave, and use the toilet, essentially managing her daily hygiene needs, albeit needing reminders.  She needs reminders to take her medicine, bathe, and brush her teeth.  She can perform simple household tasks such as laundry, dishes, and cleaning, but only does so when told to do it, indicating the task is not beyond her mentally, but she may need

supervision to do a similar task, either to provide the necessary reminders or motivation. She can reportedly cook, but also reportedly does so much less, if at all.

The psychiatric record is also consistent with the claimant's relatively normal functioning. In examination, the claimant was generally alert and oriented. She displayed no psychiatric disturbances such as psychosis. While the claimant has regularly alleged hallucinations, she has also regularly denied the presence of them in examinations. She also indicated that Paxil and other psychiatric medications were effective at eliminating her panic and anxiety. The claimant herself also reported that her hallucinations only started after she stopped taking Topamax. However, her memory was also generally normal. She denied suicidal or homicidal ideation.

If the claimant was as limited as alleged, she would have experience [sic] far more significant treatment, with far less overall palliative effect. However, with relatively conservative treatment of regular counseling and medication management, she maintained a relatively normal level of functioning. While she displayed motivation issues, her daily activities indicate the capacity for simple tasks with reminders or requests to work, despite consistent symptoms of mood issues and hallucinations. Most consistent with this psychological record and her daily activities are the findings at the initial and reconsideration level of review. Inconsistent with this is Dr. Seward's opinion. Dr. Wagner's opinion is consistent with the lack of ongoing consistent physical treatment demonstrated in the record summarized above. Therefore, the State Agency findings are persuasive. Dr. Wagner is persuasive. Dr. Seward is not. The claimant is not persuasive.

(AR 23; citations omitted).

First, it is clear that the ALJ found that Dr. Seward's opinion was unsupported by Dr. Seward's examination. The ALJ noted that Dr. Seward found Plaintiff to have "overall normal mental status in the examination," was cooperative, alert, fully oriented, with intact intelligence and good eye contact; her memory and fund of knowledge were adequate, as was her concentration; her abstract reasoning appeared to be intact, with judgment, calculation ability, and insight intact; she had intact, linear, and logical thoughts, denying hallucinations. The ALJ observed that the only abnormal findings during the examination were Plaintiff's anxious mood and affect and somewhat impaired attention. Given this record, the ALJ found that it was unclear on what basis Dr. Seward

19

reached his conclusions of marked limitations, "except perhaps purely by accepting the claimant's allegations entirely." (AR 22-23).

A review of Dr. Seward's examination confirms the ALJ's account. *See* (AR 583-87). Dr. Seward does not cite to, nor provide, any further grounds beyond his examination upon which to base his opinion. *See id.* Plaintiff does not cite any record evidence to refute the ALJ's findings regarding the supportability of Dr. Seward's opinion and Dr. Seward's examination does not reference any specific objective findings to support his opined limitations. In challenging the ALJ's finding that it was unclear on what basis Dr. Seward reached his conclusions of marked limitations, Plaintiff states without elaboration or further explanation that "Dr. Seward noted that his functional assessment was based on the result of the mental status examination and clinical interview." (Doc. 12 at 13). However, it is plain from the ALJ's decision that this language was intended to convey that the mental status examination and clinical interview *could not support* the findings of marked limitations, based on the record as provided by Dr. Seward.

"The ALJ need not accept the opinion of any physician … if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024). Thus, the ALJ properly evaluated the supportability factor regarding Dr. Seward's opinion. *See, e.g., Fidel R.P. v. O'Malley*, 754 F. Supp. 3d 986, 992 (N.D. Cal. 2024) (reversing in part on other grounds and noting that "the ALJ found Dr. Mathews' statement … was supported only 'vaguely by her "belief"' and 'not well supported by particular findings.' Indeed, Dr. Mathews did not refer to any diagnosis, testing, or functional limitation finding to support this statement. And Dr. Mathews' own treatment notes do not document abnormalities with Plaintiff's cognitive functioning.").

Second, the ALJ found that Dr. Seward's opinion was inconsistent with the record medical evidence and that his examination findings were in contrast with the findings of the state agency psychological consultants. The ALJ cites to the record for the findings that Plaintiff alleged hallucinations regularly, but also denied their presence regularly in examinations, and indicated that Paxil and other medications were effective at eliminating her panic and anxiety. (AR 23; citing 693, 731). The ALJ notes that Plaintiff reported her hallucinations only started after she stopped

20

taking Topamax. *Id.* (citing (AR 771).  The ALJ also noted that Plaintiff's memory was "generally normal" and that she denied suicidal or homicidal ideation. *Id.* (citing AR 776, 1363).

The ALJ's citations to the record support the findings for which they are offered, with the minor exception that while the ALJ cites Exhibit 15F, page eight, for the proposition that Plaintiff denied suicidal or homicidal ideation, that information is contained on page seven of said exhibit. *See* (AR 775).  Aside from contesting the ALJ's findings of inconsistency based on Plaintiff's activities of daily living, and citing to the medical record for the proposition that Plaintiff reported auditory hallucinations, Plaintiff does not advance any identifiable argument in opposition to the ALJ's other findings of inconsistency. *See* (Doc. 12 at 14).  Thus, though Plaintiff asserts that she "reported throughout the record that she experienced auditory hallucinations," with citations thereto, she provides no argument regarding the ALJ's finding that Plaintiff reported that her hallucinations started after she stopped taking Topamax. *See id.*

Even if the Court were to credit Plaintiff's argument regarding auditory hallucinations, where evidence is open to more than one rational interpretation, and the interpretation offered by the ALJ is valid, the Court may not substitute its judgment in place of the ALJ's findings.  *See Lopez v. Saul*, No. 1:19-cv-00971-BAM, 2020 WL 6526197, at *8 (E.D. Cal. Nov. 5, 2020) ("Where evidence may support more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner … A review of the record reveals that there is substantial evidence supporting the ALJ's finding that the relevant medical evidence is inconsistent with the severity of the limitations set forth in Dr. Kirby's opinion.") (quotations omitted; citing, *inter alia*, *Tackett*, 180 F.3d at 1097).

As discussed *supra* in subpart (A), the ALJ examined the opinions of the state agency psychological consultants at the initial consideration and reconsideration stages, finding them persuasive and noting that they conflicted with Dr. Seward's opined limitations.  The ALJ reasoned that Dr. Seward's medical examination supported the limitations offered by the state agency psychological consultants, but not those of Dr. Seward.  The ALJ cited objective findings in the record that undermined the marked limitations opined by Dr. Seward.  Thus, the ALJ properly evaluated Dr. Seward's opinion as to its inconsistency with the evidence of record. *See Norma H.*

21

*v. Colvin*, No. 24-cv-121-LL-DDL, 2024 WL 5245091, at *6 (S.D. Cal. Dec. 30, 2024) ("The ALJ identified specific, objective evidence in the record—including Dr. Brizzie's own treatment notes—undermining the severity of restrictions found in Dr. Brizzie's assessment."); *James*, 2024 WL 2883532, at *9 ("A review of the record reveals that the ALJ did not find that there was a *lack* of evidence to support Dr. Michiel's opinions, but rather, that other evidence *actively contradicted* Dr. Michiel's findings.  The two exhibits the ALJ cited include many instances where providers noted that Plaintiff was alert and oriented, with a normal mood and no focal deficit or confusion.  Similarly, she often denied being depressed with any stressors, and providers found she was alert and oriented, cooperative, with clear speech and no acute distress and that she was answering questions appropriately.") (citations omitted; emphasis in original).

In sum, the ALJ's evaluation of Dr. Seward's opinion as to the factors of supportability and consistency was supported by substantial evidence.

### 3.    The ALJ's Treatment of Daily Activities Was Harmless Error

The ALJ does not explain in the decision which of Dr. Seward's opined limitations were contradicted by certain ADLs, nor why they were contradicted as such.  The ALJ lists Plaintiff's ADLs generally, and concludes that they are inconsistent with Dr. Seward's opinion, without tying the ADLs to specific limitations opined by Dr. Seward and explaining the reasoning behind the findings.  This constitutes error.  *See, e.g., Kimberly J. v. Acting Comm'r of Soc. Sec.*, No. 2:22-cv-1421-TLF, 2023 WL 3560605, at *5 (W.D. Wash. May 19, 2023) ("Yet, the ALJ fails to explain how Dr. Takemura's or Dr. Balderia's medical opinions regarding plaintiff's work limitations and need to take multiple breaks during an eight-hour workday are undermined by plaintiff's ability to partake in these activities.  Thus, in discounting their opinions based on alleged inconsistencies with plaintiff's activities of daily living, the ALJ erred.").

However, as noted above, the ALJ provided adequate, independent reasons to discount Dr. Seward's opinion, namely due to its lack of support from Dr. Seward's examination and inconsistency with the medical record.  A court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation and quotation omitted).  Harmless error "exists when it is clear from the record that the ALJ's error was

22

inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation and quotation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409.

The ALJ's improper reliance on Plaintiff's purportedly inconsistent ADLs does not undermine the other reasoning offered by the ALJ regarding Dr. Seward's opinion; namely, the finding that the marked limitations therein were unsupported by the examination and inconsistent with the medical record. Thus, the ALJ's error in discounting Dr. Seward's opinion based on a deficient analysis of Plaintiff's ADLs is harmless as it is inconsequential to the ultimate determination that Plaintiff is not disabled.

*   *   *   *   *

In sum, the ALJ did not erroneously fail to provide reasoning sufficient to reject the challenged limitation assessed by Dr. Caruso-Radin, did not error in failing to include said limitation in the RFC or in failing to pose said limitation in a hypothetical to the VE, and properly discounted Dr. Seward's opinion regarding marked limitations.

## IV.   CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 12) is DENIED; and

2. The Clerk of the Court is directed to enter judgment for Defendant and to then close this case.

IT IS SO ORDERED.

Dated:   **June 23, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

23